**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

| | |
|---|---|
| BRIAN EUGENE QUEEN,<br><br>Plaintiff,<br>vs.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | No. C15-4199-LTS<br><br>**MEMORANDUM OPINION AND ORDER ON REPORT AND RECOMMENDATION** |

_____

## I. INTRODUCTION

This case is before me on a Report and Recommendation (R&R) by the Honorable Jon Stuart Scoles, Chief United States Magistrate Judge. *See* Doc. No. 19. Judge Scoles recommends that I affirm the decision of the Commissioner of Social Security (the Commissioner) denying plaintiff Brian Eugene Queen's applications for Social Security disability benefits (DIB) and supplemental security income benefits (SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401 et seq. (Act).

Queen has filed timely objections (Doc. No. 20) to the R&R. The Commissioner has not filed a response. The procedural history and relevant facts are set forth in the R&R and are repeated herein only to the extent necessary.

## II. APPLICABLE STANDARDS

*A. Judicial Review of the Commissioner's Decision*

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as

to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645. The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Wester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th

Cir. 2008)). This is true even if the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## B. *Review of Report and Recommendation*

A district judge must review a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error"). As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of*

3

*Bessemer City*, 470 U.S. 564, 573 74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). However, a district judge may elect to review an R&R under a more-exacting standard even if no objections are filed:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 150 (1985).

### III. THE R&R

Judge Scoles noted that Queen alleges disability due to bipolar disorder, narcolepsy, sleep apnea, extreme pain, feet problems, COPD and poor mobility, with an alleged onset date of March 1, 2011. Doc. No. 19 at 2. He reviewed the ALJ's evaluation of the medical evidence – including the opinions of Douglas W. Martin, M.D., and Thor D. Swanson, M.D. – and the hypothetical questions posed to the vocational expert (VE).

With regard to Dr. Swanson, Judge Scoles first described the standards for evaluating a treating source's medical opinion:

> The ALJ is required to "assess the record as a whole to determine whether treating physicians' opinions are inconsistent with substantial evidence of the record." *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)). "Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (citing *Prosch v Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). "The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." *Id.*; *see also Travis*, 477 F.3d at 1041 ("A physician's statement that is 'not supported by diagnoses based on objective evidence' will not support a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir.

4

2003). If the doctor's opinion is 'inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.' *Id.*"). The ALJ may discount or disregard a treating physician's opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions. *Hamilton v. Astrue*, 518 F.3d 607, 609 (8th Cir. 2008).

    Also, the regulations require an ALJ to give "good reasons" for assigning weight to statements provided by a treating physician. *See* 20 C.F.R. § 404.1527(c)(2). An ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. § 404.1527(d). If the medical opinion from a treating source is not given controlling weight, then the ALJ considers the following factors for determining the weight to be given to all medical opinions: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese*, 552 F.3d at 731 (citing 20 C.F.R. §§ 404.1527(c)). "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner*, 499 F.3d at 848 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)). The decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. SSR 96-2P, 1996 WL 374188 (1996).

Doc. No. 19 at 10-11. Judge Scoles noted that although the ALJ did not view Dr. Swanson as a treating source, Dr. Swanson provided the Appeals Council with a letter describing his treatment relationship with Queen. *Id.* at 13 (citing AR 446). Judge Scoles found that despite the ALJ's mistake as to Dr. Swanson's status, the ALJ fully considered and properly weighed Dr. Swanson's opinion. *Id.* at 13-14. He further found that the ALJ's decision would have been the same even if he had considered Dr. Swanson as a

treating source. *Id.* at 14. Thus, Judge Scoles found that the ALJ's error was harmless.[1] *Id.*

Addressing Dr. Martin's opinion, Judge Scoles first described the standards for evaluating a non-treating medical source's opinion:

> In considering medical evidence, an ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. §§ 404.1527(c), 416.927(c). If the medical opinion is not from a treating source, then the ALJ considers the following factors for determining the weight to be given to the non-treating medical opinion: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese v. Astrue*, 552 F.3d 728, 731 (8th Cir. 2009) (citing 20 C.F.R. § 404.1527(d)). "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)).
>
> In considering a physician's RFC assessment, an ALJ is not required to give controlling weight to the physician's assessment if it is inconsistent with other substantial evidence in the record. *Strongson*, 361 F.3d at 1070; *see also Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) ("A physician's statement that is 'not supported by diagnoses based on objective evidence' will not support a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is 'inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.' *Id.*"). "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." Social Security Ruling, 96-8p (July 2, 1996).
>
> Additionally, an ALJ has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d

---

[1] Judge Scoles also addressed, and rejected, Queen's argument that the Appeals Council failed to give proper consideration to Dr. Swanson's letter. Doc. No. 19 at 14.

6

> 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

Doc. No. 19 at 15-16. Judge Scoles found that the ALJ applied the correct factors for evaluating a consultative examiner's opinion and properly gave significant weight to Dr. Martin's opinion. *Id.* at 17.

Turning next to the hypothetical questions posed to the VE, Judge Scoles stated:

> [H]ypothetical questions posed to a vocational expert, including a claimant's RFC, must set forth his or her physical and mental impairments. *Goff*, 421 F.3d at 794. "The hypothetical question must capture the concrete consequences of the claimant's deficiencies." *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001) (citing *Taylor v. Chater*, 118 F.3d 1274, 1278 (8th Cir. 1997)). The ALJ is required to include only those impairments which are substantially supported by the record as a whole. *Goose v. Apfel*, 238 F.3d 981, 985 (8th Cir. 2001); *see also Haggard v. Apfel*, 201 F.3d 591, 595 (8th Cir. 1999) ("A hypothetical question 'is sufficient if it sets forth the impairments which are accepted as true by the ALJ.' *See Davis v. Shalala*, 31 F.3d 753, 755 (8th Cir. 1994) (quoting *Roberts v. Heckler*, 783 F.2d 110, 112 (8th Cir. 1985).").

Doc. No. 19 at 18-19. Judge Scoles found that the hypothetical questions posed to the VE properly included all of Queen's impairments that are substantially supported by the record as a whole. *Id.* at 20-21. He further found the ALJ fully and fairly developed the record. *Id.* at 20.

7

## IV. DISCUSSION

### A. Queen's Objections

Queen objects to Judge Scoles' findings (1) that the ALJ properly evaluated the opinions of Dr. Swanson and Dr. Martin and (2) that the ALJ posed proper hypothetical questions to the VE. Doc. No. 20. I will review these issues de novo.

### B. Analysis

#### 1. Evaluation of the Medical Opinions

##### a. Dr. Swanson

Dr. Swanson reported that Queen has pain in his neck, low back, hands, feet and head, along with fatigue and dizziness, and is unstable while climbing. AR 423. He indicated that Queen can sit for only one hour at a time, stand for only 30 minutes at a time and sit or stand/walk for less than two hours total during an eight-hour workday. AR 424. He further opined that Queen requires a job that would permit moving from sitting, standing and walking, requires 3-4 breaks a day for 5-10 minutes at a time, requires having his legs elevated when sitting 50% of the time, can occasionally lift 10 pounds, can never twist, stoop, crouch/squat or climb ladders, can occasionally climb stairs, can use hands/fingers/arms 25% of the time for grasping, fine manipulations and reaching in front of the body, and can never reach overhead. AR 423-25. Dr. Swanson also predicted that Queen will be off task 25% or more of the time, is capable of only low stress work and will be absent from work about four days per month. AR 426.

The ALJ found that the record does not support Dr. Swanson's limitations. Based on my de novo review of the record, I agree. The ALJ correctly noted that Dr. Swanson failed to identify any objective testing results to support those limitations and also pointed out that while Dr. Swanson reported that Queen requires a cane, no such requirement is described in the treatment notes or the report of Queen's consultative exam. AR 29. "[T]he ALJ may reject the conclusions of any medical expert, whether hired by a claimant

or by the government, if inconsistent with the medical record as a whole." *Bentley*, 52 F.3d at 787. "[A] conclusory statement—that is, a statement not supported by medical diagnoses based on objective evidence—will not support a finding of disability." *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003) (finding that a letter listing a diagnosis did not, without objective medical evidence, support a finding of disability). Here, the ALJ was entitled to find that the record does not support the limitations Dr. Swanson reported. Moreover, I agree with Judge Scoles that in light of the flaws the ALJ identified with regard to Dr. Swanson's opinion, the ALJ's evaluation would not have changed even if the ALJ had viewed Dr. Swanson as a treating source. The ALJ provided good reasons, supported by substantial evidence, for discounting Dr. Swanson's opinion.

### b. Dr. Martin

Dr. Martin, a consultative examiner, found that Queen can lift 15-20 pounds occasionally, 5-10 pounds frequently and negligible weights constantly. AR 416. Dr. Martin also found that Queen can stand for 3-4 hours a day, and requires 10-15 minutes off his feet every hour. *Id.* Dr. Martin reported that Queen is able to stoop, climb and kneel or crawl one-half of the amount that "would be considered normal." *Id.* Dr. Martin noted that Queen will have problems with highly-repetitive grasping or gripping bilaterally and with any task that would require vibratory tool use. *Id.* Dr. Martin found flexion issues only with regard to Queen's lumbar forward flexion and extension and forward neck extension, but noted minimal degree deficits, good grip strength with 4/5 on each hand, good muscle strength exhibiting a 5/5 on both sides and 5/5 lower extremity muscle strength on both left and right sides. AR 418-19.

The ALJ largely adopted the limitations Dr. Martin reported. Queen argues that the ALJ's RFC finding that he can lift 20 pounds occasionally is not supported by Dr. Martin's opinion. I disagree. Dr. Martin opined that Queen can lift 15-20 pounds

occasionally. AR 416. Lifting 20 pounds is clearly within this range. Queen also argues that Dr. Martin's opinion does not support a finding of frequent handling or fingering, but this is incorrect. Dr. Martin opined that Queen had a 4/5 grip strength bilaterally and 5/5 in wrist, biceps, triceps and shoulder strength. AR 414. Dr. Martin opined that "his carpel tunnel syndrome signs are essentially negative," but did note some hand atrophy in his left hand. *Id.* Dr. Martin's findings support the ALJ's RFC.

Queen further argues that the ALJ erred in failing to incorporate Dr. Martin's opinion that he requires excessive unscheduled breaks. The ALJ found that this portion of the opinion is not consistent with the record as a whole. As the ALJ noted, Queen held himself out as being ready, willing and able to work while receiving unemployment benefits from his alleged onset date until mid-2012. AR 24, 220. This is not consistent with a finding that Queen would require excessive breaks. *See, e.g.*, *Milam v. Colvin*, 794 F.3d 978, 984 (8th Cir. 2015) (seeking and receiving unemployment benefits contradicts a claim of disabling pain). In addition, Donald Shumate, D.O., provided a consultative opinion in which he found Dr. Martin's requirement that Queen be off his feet for 10-15 minutes every hour to be inconsistent with the objective examination findings. AR 98. I agree. Dr. Martin reported normal strength and flexion in Queen's lower extremities and no loss of muscle tone, atrophy or muscle spasms. AR 415. Dr. Martin further found no problems in lower extremity strength and no kyphosis or scoliosis. AR 414-15. Moreover, during an examination at Siouxland Community Health Center, it was noted that Queen had a normal gait. AR 364. I find no error with regard to the ALJ's decision to discount this portion of Dr. Martin's opinion.

Ultimately, I find that the ALJ's RFC findings are supported by substantial evidence. Aside from the suggestion that Queen be off his feet for 10-15 minutes every hour, Dr. Martin's findings were incorporated into the RFC. AR 23, 415-17. In addition, Dr. Shumate's opinion and the opinion of Laura Griffiths, D.O., another state

10

agency consultant, support the RFC. AR 98, 112-13. Finally, as noted above, the ALJ provided good reasons for discounting Dr. Swanson's opinion.

Based on my de novo review of the record, I agree with Judge Scoles that the ALJ properly evaluated the opinions of Dr. Swanson and Dr. Martin and formulated an RFC that is supported by substantial evidence. Queen's objection to this portion of the R&R is overruled.

### 2. *The Hypothetical Questions*

Queen argues that the ALJ's hypothetical questions to the VE were improper because they did not include the limitations suggested by Dr. Swanson or Dr. Martin. As such, Queen contends that the VE's testimony in response to the hypothetical questions does not constitute substantial evidence.

The ALJ asked the VE about a hypothetical person of Queen's age, education and work experience who had limitations consistent with the ALJ's RFC findings. AR 68. The VE testified that this person could perform jobs such as electrical equipment subassembler, storage facility rental clerk and marker or tagger. AR 69. The ALJ then amended the hypothetical to add that the person could handle and finger only occasionally. *Id.* The VE testified that a person with this additional limitation would be able to perform jobs such as school bus monitor, surveillance systems monitor or credit checker. *Id.* at 69-70.

Queen alleges these hypothetical questions should have included all of the limitations provided by Dr. Swanson and Dr. Martin. As discussed above, however, the ALJ properly evaluated these opinions and incorporated all supported limitations into the RFC. The hypothetical questions properly included all limitations that are substantially supported by the record as a whole. As such, the VE's testimony in response to those questions constitutes substantial evidence supporting the ALJ's finding that Queen was

11

capable of performing other work. *See Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001). Queen's objection to this portion of the R&R is overruled.

## V. CONCLUSION

For the reasons set forth herein:

1. Plaintiff Brian Eugene Queen's objections (Doc. No. 20) to the magistrate judge's report and recommendation are **overruled**;

2. I **accept** Chief United States Magistrate Judge Jon Stuart Scoles' August 8, 2016, report and recommendation (Doc. No. 19) without modification. *See* 28 U.S.C. § 636(b)(1).

3. Pursuant to Judge Scoles' recommendation:

    a. The Commissioner's determination that Queen was not disabled is **affirmed**; and

    b. Judgment shall enter against Queen and in favor of the Commissioner.

**IT IS SO ORDERED.**

**DATED** this 27th day of September, 2016.

_____
LEONARD T. STRAND
UNITED STATES DISTRICT JUDGE